UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUDSON DOUBLE,

                Plaintiff,

-against-

VASSAR COLLEGE,

                Defendant.

**<u>OPINION AND ORDER</u>**

25-CV-10512 (PMH)

PHILIP M. HALPERN, United States District Judge:

Before the Court are two motions to intervene under Federal Rule of Civil Procedure 24(a), to replace the proposed intervenor's name with a pseudonym, and to seal this case, filed by non-party Sebastian Woods-DeLeon ("Woods-DeLeon" or "Proposed Intervenor").[1] Woods-DeLeon filed the first motion on December 30, 2025 (Doc. 6), and a second motion for the same relief on March 24, 2026, after Plaintiff amended his complaint. (Doc. 23). Plaintiff opposed both motions (Doc. 7, Doc. 25).[2]

For the reasons set forth below, the motions to intervene and the ancillary motions for orders to shield the Proposed Intervenor's identity and seal the initiating documents in this action are denied.

---

[1] Proposed Intervenor's first motion specified, pursuant to Local Civil Rule 7.1(a)(1), it was brought only under Rule 24(a). (Doc. 6). By footnote in the accompanying memorandum of law, Proposed Intervenor suggests that the Court consider, in the alternative, permissive intervention under Rule 24(b). (Doc. 6-1 at 7 n.1). Because both parties fully briefed Proposed Intervenor's alternative basis for intervention, the Court considers that basis as well. Proposed Intervenor filed the second motion to intervene while that first motion was still pending. Plaintiff requested that the Court strike the second motion as procedurally improper, or alternatively, consolidate the motions. (Doc. 25 at 5). The Court declines to strike the second motion and considers it on the merits.

[2] Following the filing of reply in further support of Woods-DeLeon's first motion, Plaintiff sought and obtained leave to file sur-reply (Doc. 18).

## BACKGROUND

Hudson Double commenced this action on December 18, 2025 against Vassar College, alleging retaliation under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), retaliation under the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §296(7), breach of contract, promissory estoppel, declaratory judgment, and permanent injunction. (Doc. 1, Doc. 5). On March 6, 2026, Plaintiff filed an amended complaint alleging the same claims for relief. (Doc. 21). Plaintiff filed a second amended complaint on April 9, 2026, wherein he withdrew the declaratory judgment and permanent injunction claims for relief (Doc. 27, "SAC").

The facts recited herein are drawn from the operative second amended complaint, unless otherwise indicated, and are taken as true for purposes of this motion. Plaintiff, in December 2024, began dating Julia Haggerty-DeGiorgis ("Julia"). (SAC ¶ 27). Julia's friend, Jane Doe—who was 16 years old (*id.* ¶ 11)—told Julia that something happened to her at a college function held on November 23, 2024 called "Latin Night" (*id.* ¶¶ 9, 26). Jane eventually told Julia the full account of what happened, and with Jane's permission, Julia told Plaintiff what she understood to have happened. (*Id.* ¶¶ 26, 29). According to the pleading, Woods-DeLeon saw Jane at Latin Night, approached her, and invited her to go outside to continue talking. (*Id.* ¶¶ 9-13). He placed his hand on and gripped her thigh, attempted to kiss her, and when she rebuffed him, he backed off and they parted ways. (*Id.* ¶¶ 14-20). On December 7, 2024, Woods-DeLeon saw Jane at a campus event and approached Jane to apologize. (*Id.* ¶¶ 21-22). Jane had a hard time coping and shared with Plaintiff the emotional toll the incident had taken on her, including her fear of walking alone, avoiding campus spaces, and anxiety about encountering Woods-DeLeon. (*Id.* ¶¶ 25, 30). An anonymous report was filed in December 2024 with Defendant Vassar College's Title IX Office

on Jane's behalf regarding Woods-DeLeon's conduct toward her, but Defendant did not act on that report. (*Id.* ¶ 33). The Assistant Vice President (AVP) for Institutional Equity and Title IX Coordinator, Belinda Guthrie, did not contact law enforcement on Jane's behalf and failed to pursue Jane's Title IX complaint against Woods-DeLeon. (*Id.* ¶ 34). Plaintiff alleges that Guthrie maintains a close professional and personal relationship with Woods-DeLeon's mother, who is a professor at Defendant Vassar College. (*Id.*).

Plaintiff learned of another incident involving another student, Jane Doe II, in which Woods-DeLeon became overly touchy with Jane Doe II who did not consent to the touching. (*Id.* ¶ 36). Plaintiff texted his high school friend, who Plaintiff learned performed in a band with Woods-DeLeon, advising him that Woods-DeLeon assaulted Jane and possibly others. (*Id.* ¶ 39). Plaintiff's high school friend responded that Jane should file a complaint with the Title IX office. (*Id.* ¶ 40). Plaintiff explained that Jane was already involved with the office, and that he felt it was important that his friend keep an eye on Woods-DeLeon. (*Id.* ¶ 41). Plaintiff, in the spring of 2025, saw anonymous posts on a social media platform called Fizz, which platform is exclusive to Vassar College students, discussing misconduct by Woods-DeLeon. (*Id.* ¶¶ 42-43). On April 18, 2025, Plaintiff posted anonymously on Fizz, referencing Woods-DeLeon as "[t]he drummer in that band earlier," stating that Woods-DeLeon has "SAed" multiple people, to mean that he "sexually assaulted" them. (*Id.* ¶ 44).

Woods-DeLeon sought help from his mother, Professor Woods, who had previously held other significant roles at Vassar, including providing Title IX-related trainings, serving as a 24-hour advocate, and serving on the steering committee for the Support Advocacy and Violence Prevention (SAVP) program. (*Id.* ¶¶ 49-50). Professor Woods engaged informally with Vassar administrators, including meetings with Dean Luis Inoa, Brian Van Brunt, and AVP Guthrie. (*Id.*

3

¶ 52). Defendant immediately held strategy meetings, mobilized institutional resources, and initiated investigative searches once Professor Woods and Woods-DeLeon complained about online statements and rumors regarding Woods-DeLeon's conduct. (*Id.* ¶ 59). Professor Woods sought institutional intervention to pursue what she described as "problematic defamation." (*Id.* ¶¶ 64-65). The conversation focused on stopping online comments about Woods-DeLeon, but no one ever asserted that the posts targeted Woods-DeLeon because of his sex, nor that the case was about Plaintiff's sexual harassment or discrimination of Woods-DeLeon. (*Id.* ¶ 69).

On May 20, 2025, a second strategy meeting was held among Guthrie, Woods-DeLeon, Professor Woods, and Woods-DeLeon's father. (*Id.* ¶ 72). In addition to discussing searches and possible search terms on Fizz, AVP Guthrie advised Woods-DeLeon that the allegations based on what he shared and what Jane shared in her initial report is that there was no conduct that would be defined as sexual that would require Defendant to notify the police. (*Id.* ¶ 77).

On June 3, 2025, Defendant filed two Title IX complaints, one against Plaintiff and one against Jane. (*Id.* ¶ 79). On June 19, 2025, Defendant served Plaintiff and Jane with Notices of Investigation and Allegations (NOIA). (*Id.* ¶ 80). Defendant alleged that Plaintiff, in the Spring 2025 semester, spread "untrue rumors" on Fizz that Woods-DeLeon had sexually assaulted other individuals and charged Plaintiff's speech as: (1) Title IX hostile environment sexual harassment; (2) discriminatory harassment under its policy against discrimination ("on the basis of actual or perceived characteristic"); and (3) "disruptive conduct" under its community expectations policy. (*Id.* ¶¶ 81-82). Formal disciplinary proceedings and informal resolution efforts continued thereafter. (*Id.* ¶¶ 86-88). Plaintiff repeatedly urged Defendant to terminate the Title IX investigation and prosecution, and Defendant declined to do so. (*Id.* ¶ 89).

Defendant initiated its formal investigation into Jane's case in October 2025, after Woods-DeLeon initiated Title IX complaints against Jane and Plaintiff. (*Id.* ¶ 35). Also in October 2025, the Title IX Investigator's draft report concerning the charges against Plaintiff issued. (*Id.* ¶ 89). Defendant continued to prosecute the matter. (*Id.* ¶ 92). On December 1, 2025, the Investigator issued a final report, which found that Plaintiff's speech was actionable under Title IX and submitted both the draft and final investigative reports to AVP Guthrie for review prior to their release to the parties. (*Id.* ¶¶ 93-103).

Defendant's Title IX disciplinary hearing against Plaintiff occurred on January 6, 2026. (*Id.* ¶¶ 104-106). On January 30, 2026, a written determination was issued, finding Plaintiff not responsible for all Title IX charges, determining that Plaintiff's statements were not made "on the basis of sex;" were not motivated by sex-based hostility, sex stereotyping or differential treatment on account of sex, and thus, did not constitute Title IX harassment; and that Plaintiff did not make knowingly false accusations. (*Id.* ¶ 108). Defendant continued to punish Plaintiff for "Disruptive Conduct," and issued "a 'Warning Level 3 (Intervention)': a 'formal, final warning' to Plaintiff that 'any future failure' to meet 'community expectations' or imposed sanctions will 'likely' result in Plaintiff's temporary or permanent 'removal' from Vassar or more severe sanctions" as well as other mandatory disciplinary measures. (*Id.* ¶¶ 109-121). On February 16, 2026, Plaintiff appealed the final determination, arguing that procedural irregularities and conflicts of interest involving AVP biased the determination. (*Id.* ¶ 139). The appeal determination found that the disciplinary hearing Decision-Maker had acted objectively and ratified the disciplinary outcome. (*Id.* ¶¶ 140-149).

Plaintiff suffered and continues to suffer profound anxiety and psychological harm, which has impacted his physical health, as a result of the Title IX investigation. (*Id.* ¶¶ 150-152). He has

been impaired in his ability to fully participate in and benefit from his education, has been subjected to stigma and reputational harm within the campus community, and is unable to complete his degree on schedule with the class with which he originally matriculated, thereby delaying his anticipated entry into the professional workforce. (*Id.* ¶¶ 153-161). Plaintiff has suffered other damages, including ongoing sanctions and threat of escalated discipline, and on March 20, 2026, Plaintiff formally withdrew from Vassar. (*Id.* ¶¶ 162-165).

## STANDARD OF REVIEW

### I.    Intervention as of Right

Woods-DeLeon seeks to intervene in this action as of right pursuant to Federal Rule of Civil Procedure 24(a)(2).[3] "The proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention." *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. State of New York*, No. 19-CV-11285, 2020 WL 5658703, at *5 (S.D.N.Y. Sept. 23, 2020).[4] To prevail on a motion to intervene as of right under Rule 24(a)(2), a movant must establish:

> (1) the motion is timely; (2) it asserts an interest relating to the property or transaction that is the subject of the action; (3) without intervention, disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) its interest is not adequately represented by the other parties.

*CWCapital Cobalt Vr Ltd. v. U.S. Bank Nat'l Ass'n*, 790 F. App'x 260, 262 (2d Cir. 2019). The Second Circuit has "underscored that a failure to satisfy *any one* of these four requirements is a

---

[3] The motions sought intervention in this action, as well as orders sealing the initiating documents and replacing Woods-DeLeon's name with a pseudonym. (Doc. 6; Doc. 23). Woods-DeLeon, in one instance in his reply on the first motion, casually suggests that he seeks "limited intervention solely to address pseudonymity, sealing, and confidentiality" (Doc. 17 at 5), but does not otherwise concede that his motions are so limited. Accordingly, the Court treats the motions as they were made for intervention as of right in this action as a defendant.

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014); *see also New York SMSA Ltd. P'ship v. Town of Carmel*, No. 19-CV-10793, 2022 WL 12064663, at *2 (S.D.N.Y. Oct. 20, 2022) (failure to satisfy one of the four requirements resulted in denial of the motion). "While accepting as true the non-conclusory allegations of the motion, courts applying Rule 24 must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases." *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016). Furthermore, "except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *Oneida Indian Nation of Wisc. v. State of New York*, 732 F.2d 261, 265 (2d Cir. 1984).

II.   Permissive Intervention

Woods-DeLeon alternatively moves for permissive intervention under Federal Rule of Civil Procedure 24(b). Rule 24(b) provides that "on timely motion, the Court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Courts consider "substantially the same factors" when deciding whether to permit permissive intervention as for interventions as of right. *Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.)*, 320 F.3d 291, 300 n.5 (2d Cir. 2003). Permissive intervention lies within the Court's "broad discretion," *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005). The Court, in exercising that discretion, "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

**ANALYSIS**

I.   Intervention as of Right

The Court turns first to Woods-DeLeon's motion to intervene as of right under Rule 24(a)(2) and considers each of the four elements *seriatim*.

A.  Timeliness of the Motion to Intervene

The court may consider, in assessing the timeliness of a motion to intervene, the following factors: "(1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000). "A district court has broad discretion in assessing the timeliness of a motion to intervene, which defies precise definition." *Id.* With respect to the notice factor, "Rule 24(a) requires courts to measure timeliness from the moment when the applicant had actual or constructive notice of its unrepresented interest." *Floyd v. City of New York*, 302 F.R.D. 69, 86 (S.D.N.Y. 2014).

Although Plaintiff asserts that the Proposed Intervenor fails to satisfy this element (*see* Doc. 7 at 10 (contending that Woods-DeLeon fails to satisfy all four elements)), he makes no substantive argument to support the proposition that either motion was untimely. Absent any argument to the contrary, and in light of the facts that the first motion was made less than two weeks after Plaintiff commenced this action and there is no indication that Woods-DeLeon was otherwise notified of the commencement of the action, the Court simply cannot find that the motion to intervene was untimely under these circumstances.

B. <u>Woods-DeLeon's Interest in the Subject Matter of this Action</u>

The Proposed Intervenor has not, however, established an interest in the subject matter of this lawsuit sufficient to satisfy the test for intervention as of right. For an interest to be cognizable under Rule 24(a)(2), it must be "direct, substantial, and legally protectable." *Wash. Electric Coop., Inc. v. Mass. Mun. Wholesale Electric Co.*, 922 F.2d 92, 97 (2d Cir. 1990). On the other hand, "an interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Id.*

Woods-DeLeon argues that he has a direct interest in confidentiality in this action. (Doc. 6-1 at 8; Doc. 23-1 at 7). The subject matter of this lawsuit is Defendant's response to Plaintiff's speech on behalf of Jane, and concerns Plaintiff's Title IX rights vis-à-vis Vassar College. The underlying speech at issue involves matters that are sensitive and personal, so Woods-DeLeon argues that his interest in the subject matter of this suit is in "the confidentiality" of his "identity," as well as "his personal safety and mental well-being." (Doc. 6-1 at 8; Doc. 23-1 at 7; Doc. 17 at 3). While Woods-DeLeon's role is no doubt central to the underlying facts collateral to the claims herein, those facts flesh out the context of Plaintiff's claims against Defendant, but do not bear any direct relation to their subject matter.

Generalized assertions of an interest in reputation (Doc. 17 at 5)[5] "are not sufficiently direct, substantial or legally protectible to give rise to a right to intervene. *Florence v. 72andSunny Partners, LLC*, No. 25-CV-07082, 2026 WL 787843, at *2 (S.D.N.Y. Mar. 20, 2026); *see also Floyd*, 770 F.3d at 1061 (intervention denied where proposed intervenors based their argument on the disclosure of police officers by name and attributing unlawful conduct to them, but failed to

---

[5] Although Proposed Intervenor argues on one page of his reply memorandum that his interests are not "merely reputational," (Doc. 17 at 2) he unequivocally avers on another that his interests "are personal, reputational . . ." (*id.* at 5).

substantiate claims of reputational harm, that their safety was in jeopardy, or they had been adversely affected in any tangible way); *A.S. v. City Sch. Dist. of Albany*, No. 21-CV-00620, 2021 WL 4198411, at *4-5 (N.D.N.Y. Sept. 15, 2021) (denying intervention, holding that reputational interests were not "direct, substantial, and legally protectable" in action challenging the school district's response to the alleged misconduct, as opposed to the proposed intervenor's conduct). Nor are his "safety-related" concerns a direct interest in the subject matter of this action. *Restor-A-Dent Dental Lab'ys, Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984). Importantly, Proposed Intervenor does not submit evidence to substantiate any risk to his safety or mental well-being, pressing these points only through his counsel's argument in the briefs.

Not only does Proposed Intervenor fail to offer evidence to support his argument, he also fails to cite case law on point for his effort to join this lawsuit as a defendant to protect his name. Proposed Intervenor's reliance on *Blum v. Schlegel*, 150 F.R.D. 38 (W.D.N.Y. 1993) is misplaced, as that case concerns limited intervention for the purpose of obtaining a protective order for the confidentiality of certain discovery. Likewise, *Lichtman v. Blom*, No. 89-CV-05643, 1990 WL 241646 (S.D.N.Y. Dec. 27, 1990) does not support Proposed Intervenor's argument, as the issue before the court in that case was the application of a statutory right to non-disclosure of certain whistleblower reports and their identities which became an issue in discovery in that action. Here, although Proposed Intervenor raises the existence of the Family Educational Rights and Privacy Act (FERPA), contending that disclosure of his educational and disciplinary records violates his rights and creates his privacy interest in this lawsuit, unlike the statutory schemes at issue in *Lichtman*, Proposed Intervenor does not argue that FERPA applies to prohibit disclosure of his identity. (*See* Doc. 17 at 4 (Proposed Intervenor disclaiming reliance on FERPA as a cause of

10

action, arguing it is a "legislative recognition of the sensitivity and confidentiality of student educational and disciplinary records.")).

Woods-DeLeon's interest is not in the subject matter of this action, but in the non-disclosure of his identity. His absence from this lawsuit would not prevent the Court from granting complete relief between Plaintiff and Defendant. Woods-DeLeon is not a necessary party to the instant litigation. *Accord MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377*, 389 (2d Cir. 2006) ("First, even assuming Visa's motion was timely, if a party is not 'necessary' under Rule 19(a), then it cannot satisfy the test for intervention as of right under Rule 24(a)(2)."). Woods-DeLeon's motion fails to establish a sufficiently direct, substantial, and legally protectable interest in the subject matter of this litigation—Defendant's alleged retaliation against Plaintiff.

C.    Impairment of Woods-DeLeon's Interest Without Intervention

An applicant for intervention must also show that "the disposition may as a practical matter impair or impede their ability to protect their interests." *New York Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975). The Proposed Intervenor argues on this score only that his interest in privacy and security is threatened by the continuation of this lawsuit. (Doc. 6-1 at 9; Doc. 17 at 4; Doc. 23-1 at 8). Again, speculative or generalized concerns do not suffice to establish that without intervention a proposed intervenor's rights would be impaired or impeded. *A.S.*, 2021 WL 4198411, at *6 ("[A] speculative concern does not give rise to a cognizable interest under Rule 24.").

D.    Adequacy of Defendant's Representation of Woods-DeLeon's Interest

"While the burden to demonstrate inadequacy of representation is generally speaking minimal," the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler,*

11

*Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). Where the putative intervenor and named party have the same ultimate interest, "the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id.* "A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party." *NRDC, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62–63 (2d Cir. 1987). "So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented." *Id.* at 62.

Even if the Proposed Intervenor had established that his interests in privacy, reputation, and safety are cognizable interests, he has not shown that such interests would not be adequately protected by the parties. As an initial matter, "conclusory allegations" "without more, cannot overcome the presumption" of adequate representation. *U.S. Bank, N.A. v. Squadrin VCD, LLC*, 504 F. App'x 30, 33–34 (2d. Cir. 2012). Further, Woods-DeLeon shares "the same ultimate objective" as Defendant. *Butler, Fitzgerald & Potter*, 250 F.3d at 179. "[W]here the putative intervenor and a named party have the same ultimate objective . . . the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id.* at 179–80. Proposed Intervenor's claimed interests include his interest in the security of his disciplinary and educational record; and Defendant has asserted FERPA throughout its answer, declining to comment upon or disclose information absent student consent and without entry of an appropriate protective order. (*See* Doc. 28 ¶¶ 33, 52, 60-70, 72-77, 79-87, 89, 93-122, 124-130, 133-142, 144-148, 178, 185, 186, 191, 198-205; *id.* at 9, n.1 (alleging FERPA-protected records should not have

12

been filed by Plaintiff)). Proposed Intervenor has not rebutted the presumption of adequate representation. *See Florence*, 2026 WL 787843, at *3.

Accordingly, because a failure to satisfy *any one* of the four requirements for intervention as of right is a sufficient ground to deny the application, *Floyd*, 770 F.3d at 1057, Woods-DeLeon's motions to intervene as of right are denied.

II.      Permissive Intervention

The Court, in exercising its broad discretion, declines to permit intervention under Rule 24(b). "The factors that support denial of [the Proposed Intervenor's] motion[s] for intervention as of right also militate against a grant of permissive intervention under Rule 24(b)." *Florence*, 2026 WL 787843, at *3. As set forth *supra*, Woods-DeLeon has not established a cognizable interest in the subject matter of this action, that absent intervention his interest would be impaired, or that his interests are not aligned with Defendant's interests (or that Defendant has inadequately represented those aligned interests). Allowing Woods-DeLeon to prosecute any reputational claims in this action "would add an unwelcome layer of complexity outweighing any advantage." *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 468 (S.D.N.Y. 2000). "Resolving those issues would unnecessarily complicate and delay this litigation." *Prophet Mortg. Opportunities, LP v. Christiana Tr. as Tr. of RBSHD 2013-1 Tr.*, No. 22-CV-09771, 2023 WL 3570040, at *4 (S.D.N.Y. May 18, 2023). Accordingly, the motions to intervene are denied in their entireties.

III.      Pseudonymity and Sealing

Because Woods-DeLeon's motions to intervene have been denied, this Court "need not reach the merits of his accompanying motion[s]" for pseudonymity and sealing. *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 331, 334 (S.D.N.Y. 2011). Nevertheless, assuming the

13

Court were to allow intervention—which it is not—the Court would not grant Woods-DeLeon's requests for sealing and pseudonymity.

Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of [a] complaint must name all the parties," and this requirement "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). The Court has considered the nonexhaustive ten-factor test set forth in *Sealed Plaintiff*, and finds that Woods-DeLeon has not established why he or his mother[6] should be afforded pseudonymity. This action concerns Defendant's alleged retaliatory use of Title IX to punish Plaintiff's speech about Woods-DeLeon, not the twice-removed allegations of sexual assault. Whether any assault occurred is not an issue to be litigated in this action. In other words, this case does not in fact involve resolution of highly sensitive and personal matters, and in any event, allegations concerning sexual assault are not in and of themselves sufficient to justify pseudonymity. *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019).

Importantly, the record has not been developed to establish that identification risks retaliation or other severe harms. And Woods-DeLeon's name has not remained confidential as he did not even himself pseudonymize his name in his own moving papers, seek leave to do so, or file them under seal. Woods-DeLeon's repeated public identification of himself weighs against granting pseudonymous relief. *Does v. Adams*, No. 24-3064, 2026 WL 1255967, at *1 (2d Cir. May 7, 2026) ("Plaintiffs had not alleged that they would be harmed if their identities were made public because they had already identified themselves by name in the publicly-filed complaint and supporting exhibits. Nor have Plaintiffs explained why disclosure of their identities in this

---

[6] Woods-DeLeon's request to refer to his mother under pseudonym is relegated to a footnote in his moving briefs. (Doc. 6-1 at 11 n.3; Doc. 23-1 at 10 n.4).

14

litigation would cause additional physical or mental harm, especially considering that their identities have not been kept confidential (even in their own filings), weighing against their desire for anonymity.").

Accordingly, considering the above, including the fact that "there is a presumption in favor of public access to court proceedings and records," Woods-DeLeon's application to procced under a pseudonym is denied. *Adams*, 2026 WL 1255967, at \*1.

Woods-DeLeon also moved for an order sealing the initiating documents in this action, supported by conclusory argument that his personal and reputational interests overcome the presumption of public access to judicial records. (Doc. 6-1 at 20-22; Doc. 23-1 at 20-22). He then represents, in reply on his first motion, that he "seeks sealing only of materials that publicly identify him or disclose sensitive student record information. The sealing requested is limited to protect compelling privacy interests while preserving public access to the substance of the litigation." (Doc. 17 at 7). To the extent he moves to seal the initiating documents in this case, that request is not narrowly tailored to serve the purpose he contends justifies the sealing and is not otherwise consistent with the presumption in favor of public access to judicial documents. *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). To the extent he contends he has narrowed the scope of the sealing request, he has not identified what specific documents or information of which he seeks redaction or sealing. Accordingly, the request to seal is denied.

## CONCLUSION

For the reasons set forth above, Woods-DeLeon's motion to intervene is denied. His companion requests to seal the action and/or the case initiating documents and proceed pseudonymously are likewise denied.

The Clerk of the Court is respectfully directed to terminate the pending motions at Doc. 6 and Doc. 23.

**SO ORDERED:**

Dated: White Plains, New York
   July 1, 2026

_____
Philip M. Halpern
United States District Judge

16